JB:NMA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**M-10-189**

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

    -against-

JAMES MALPESO,

           Defendant.

- - - - - - - - - - - - - - X

<u>SUBMITTED UNDER SEAL</u>

AFFIDAVIT IN SUPPORT OF
<u>ARREST WARRANT</u>

(T. 18 U.S.C. §§ 894(a)(1) and
  924(c)(1)(A)(ii))

     ROBERT YPELAAR, a Special Agent of the Federal Bureau
of Investigation ("FBI"), being duly sworn, deposes and says as
follows:

     Upon information and belief, on or about and between
approximately March 1, 2004 and February 26, 2009, within the
Eastern District of New York and elsewhere, the defendant JAMES
MALPESO, did knowingly and intentionally use extortionate means
to collect and attempt to collect an extension of credit from
John Doe, an individual whose identity is known to me.

     (Title 18, United States Code, Section 894(a)(1)).

     Upon information and belief, on or about February 15,
2010, within the Eastern District of New York and elsewhere, the
defendant JAMES MALPESO, during and in relation to a crime of
violence, to wit: use of extortionate means to collect and
attempt to collect an extension of credit from John Doe, did

1

knowingly and intentionally possess a firearm in furtherance of
such crime of violence, and did knowingly and intentionally use
and carry a firearm during and in relation to such crime of
violence.

(Title 18, United States Code, Section
924(c)(1)(A)(ii)).

The source of your deponent's information and the
grounds for his belief are as follows:[1]

INTRODUCTION

1.   I have been a Special Agent with the FBI for
approximately five years and four months.  I am currently
assigned to FBI Squad C-10, which investigates the illegal
activities of the Bonanno organized crime family of La Cosa
Nostra ("Bonanno family"), among other illegal enterprises.  As
an FBI agent, I have participated in numerous investigations
during the course of which I have conducted physical and
electronic surveillance, executed court-authorized search
warrants and used other investigative techniques to secure
relevant information regarding the criminal activities of the
Bonanno family.

---

[1]    Because this affidavit is being submitted for the
limited purpose of seeking authorization to arrest MALPESO, I have
not set forth each and every fact learned during the course of this
investigation, but simply those facts that I believe are necessary
to establish probable cause for the requested arrest warrant.

2.     Based on my training and experience, I have become familiar with, among other organized criminal activities, the manner in which fraudulent schemes, illegal gambling and loansharking operations are operated.  Additionally, I am familiar with the efforts of persons involved in such activity to avoid detection by law enforcement.

3.     I am familiar with the facts and circumstances of this matter from: (a) my personal participation in this investigation; (b) reports made to me by other law enforcement agents; and (c) information obtained from cooperating witnesses and other sources of information.  Except as explicitly set forth below, I have not distinguished herein between facts of which I have personal knowledge and facts as to which I have hearsay knowledge.  In addition, the information set forth herein from cooperating witnesses and confidential informants is provided in part and in substance and is not a verbatim recitation.  All statements are provided in sum and substance and in part. Summaries of recorded conversations are based on draft transcripts of those conversations.

## PROBABLE CAUSE

A.   Confidential Source Information

4.     I have debriefed a confidential source ("CS"), who is the John Doe referenced on page 1 of this affidavit.  CS is a loanshark victim of MALPESO, and has agreed to cooperate with the

government's investigation.  As described below, at the FBI's direction, CS has consensually recorded meetings and telephone calls with MALPESO, and the FBI has recently provided CS with currency to make loansharking payments to MALPESO, as well as currency to cover expenses incurred as part of his proactive cooperation.  The information provided by CS has been corroborated by physical surveillances, other confidential sources and consensual recordings.

5.  CS has advised that since approximately March 1, 2004, MALPESO has lent approximately $200,000 to CS at an interest rate of approximately 5 "points" or percent, per week, or a total of over 250% interest per year.  CS advised that, between 2004 and the present, he has paid MALPESO approximately $500,000 in connection with the loans from MALPESO.  CS advised that he has made these payments to MALPESO in person at meetings held at a variety of locations in Staten Island, New York, including the vicinity of Travis Avenue, the vicinity of Victory Boulevard near the Staten Island Mall and the vicinity of Huguenot Avenue.[2]

6.  According to CS, over the past six years when CS failed to make timely payments on his loans, MALPESO has made

---

[2]    CS has advised that to arrange meetings to make payments on his loan, CS has contacted MALPESO by several identified telephone numbers over the years, including telephone number 954-789-1976.

general threats to CS.  CS has advised that since December 2009,
when CS was increasingly unable to make regular payments to
MALPESO, MALPESO escalated the nature of the threats made against
CS.  For example, CS advised that MALPESO began threatening CS's
physical safety, and indicated that individuals involved in
MALPESO's loansharking activities want to kill CS.  Additionally,
CS advised that MALPESO has been contacting CS by telephone,
leaving threatening voicemail messages, as well as contacting
CS's wife.  According to CS, MALPESO has demanded to see his tax
forms and other financial documentation, in order to attempt to
force CS to make payments.

     7.  On February 15, 2010, CS consensually recorded a
meeting with MALPESO in Staten Island, New York, regarding CS's
outstanding loanshark debt.  CS advised that, during this
meeting, CS entered MALPESO's vehicle, which CS described as a
white Escalade.[3]  According to CS, MALPESO became frustrated in
response to CS's explanations for not being to make payments on
the loan and removed a black handgun from the center console of
his vehicle.  CS advised that, sporadically during the meeting,
which lasted approximately ninety minutes, CS would point the
firearm at CS and make threatening remarks, including threatening

---

[3]     I and other Special Agents of the FBI have reviewed New York
State Department of Motor Vehicle records that indicate a vehicle
registered to MALPESO is a four-door white 2005 Cadillac Escalade
with New York State license plate ERJ-6908.

to shoot CS.  CS further advised that, while making these

remarks, MALPESO pressed the firearm into CS's knee and CS's

chest.

B.  <u>Consensual Recordings</u>

        8.  The information provided by CS is corroborated by

my review of consensual recordings made by CS of meetings and

telephone calls with MALPESO.  For example, during the February

15, 2010 consensually recorded meeting, the following exchange

occurred:

| | |
|---|---|
| CS: | Listen, okay, um, I got 4 because she didn't sell enough, but within two weeks, I'll get some more extra (u/i).  Listen, I came here in good faith, Jay- |
| MALPESO: | You came here in good faith? |
| CS: | I'm trying my best and I'm trying to get this loan knocked down. |
| MALPESO: | You're not doing, where's the tax money? |
| CS: | The tax thing is a good thing.  I called, I should get it by the end of February.  27th or 28th and March 2nd.  The lady says the check will be there.  Okay?  Um, I got her mother-in-law to give some extra cash- |
| MALPESO: | When?  When? |
| CS: | In the middle of March, in the middle of March, okay?  Um, I just need to know how much I owe. |
| MALPESO: | You owe 110 thousand dollars. |

CS:         I thought it was only one hundred
            and three, but you added the tax-

MALPESO:    The seven thousand.  You never
            fucking paid.

CS:         Okay, alright.  I understand.  Not
            a problem.

MALPESO:    You don't got a wire on, do you?

CS:         No, a wire?

MALPESO:    So why you asking what you owe?

CS:         Because I wanna try to pay this
            down.

Based upon my participation in the investigation, I believe that

when MALPESO stated that the CS owed $110,000, MALPESO was

discussing the outstanding balance of CS's loanshark debt from

MALPESO.

        9.    During the same consensually recorded meeting,

MALPESO demanded that CS contact another individual

("Individual"), whom CS had led MALPESO to believe was

responsible along with CS for a portion of the loanshark debt, as

follows:

        MALPESO:    Get a pen, write the guy
                    [Individual's] number and
                    everything, and call him right now.
                    Okay, that's first, because if he
                    don't owe, you don't owe, the
                    money, I'm gonna take the cannon I
                    have in this and I'm gonna put a
                    hole in you somewhere.  Okay?  Just
                    so we're sure, see this, I'm gonna
                    take this and I'm gonna put a
                    fucking hole in you somewhere.

7

CS:        But why you doin' that for, for
           what reason?

MALPESO:   Because I'm fed up with your
           bullshit.

CS advised that, at this point in the discussion, MALPESO removed
a handgun from the center console of his vehicle and pointed it
at CS, using it to emphasize his words.[4]  Based upon this
information, I believe that when MALPESO said that he was "gonna
take the cannon I have" and "put a hole in you somewhere," he was
referring to the handgun he removed from the center console of
the vehicle.  Shortly after this exchange, the consensual
recording indicates that MALPESO stated, "I'm gonna put a hole in
you somewhere, either here or at your house.  That's a fucking
promise."  MALPESO continued, "Here's what gonna happen.  Either
I'm going to put a fucking hole with this cannon in you somewhere
or you come up with the fucking money. . . I'm fucking fed up,
calling you, threatening you, calling your wife."  Based upon my
participation in this investigation, I believe that when MALPESO
told CS that either CS had to come up with the money or MALPESO
was going to "put a fucking hole with this cannon" in him,
MALPESO was threatening to shoot CS if he did not pay back his
loan from MALPESO.

---

[4]     I and other Special Agents of the FBI performed visual and
video surveillance of the February 15, 2010 meeting.  Based upon my
review of the video surveillance, the video briefly captured
MALPESO holding a handgun during the February 15, 2010 meeting.

10.   Later during the February 15, 2010 consensually recorded meeting with CS, MALPESO spoke with Individual by telephone, stating, "Get in touch with (CS). Make sure he is taking the $750 per week out of the business account." Based upon my participation in the investigation, I believe MALPESO was directing Individual to ensure that CS paid MALPESO $750 in loan payments per week. Shortly thereafter, MALPESO questioned Individual's knowledge of MALPESO's loanshark debt, asking, "You really didn't know? So, you didn't, he didn't say I pay juice every week, this, that, anything?" CS, who was present inside the SUBJECT VEHICLE while MALPESO spoke to Individual by telephone, subsequently stated to MALPESO, "I told him what the juice was. For every $5,000 was $250." Based upon my participation in this investigation, I believe that when CS stated "every $5,000 was $250," CS meant that for every $5,000 CS borrowed from MALPESO, CS had to pay $250 in interest per week.

11.   Because public filing of this document would endanger CS, and result in the defendant's flight, your deponent respectfully requests that the complaint and arrest warrant be filed under seal.

9

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant JAMES MALPESO and that MALPESO be dealt with according to law.

ROBERT YPELAAR
Special Agent
Federal Bureau of Investigation

Sworn to before me this
24 th day of February, 2010

HON. CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

10